JULIAN JACKSON ET AL. v. HOUSING
OPPORTUNITIES COMMISSION OF
MONTGOMERY COUNTY

[No. 166, September Term, 1979.]

*Decided November 14, 1980.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*David S. Greene,* with whom were *Shapiro, Meiselman & Greene, Chartered* on the brief, for appellants.

*Amicus curiae* brief of Carolyn Cramer, *M. Michael Cramer, Joseph W. Pitterich* and *Levitan, Ezrine, Cramer, West & Weinstein, Chartered, Alan Raywid, Frances Chetwynd, Daniel Stark* and *Cole, Raywid & Braverman* on the brief.

*Daniel Karp,* with whom were *Donald C. Allen* and *Allen, Thieblot & Alexander* on the brief, for appellee.

RODOWSKY, J., delivered the opinion of the Court.

In this appeal we return to the field of sovereign immunity where the parties have found some ground which has not been plowed. At issue is whether the defense is available to the Housing Opportunities Commission of Montgomery County (the "HOC"), which is the housing authority of that county. Under the particular facts presented here, we hold that immunity which the HOC might otherwise enjoy has been partially waived to the extent of permitting recovery only out of any sum payable on behalf of the HOC by its insurer under applicable liability coverage.

The appellants, Julian Jackson, a minor, and E. Bert Jackson, his father, sued the HOC on August 10, 1978 in the Circuit Court for Montgomery County. It was alleged that in August, 1976 the infant plaintiff had been an invitee on premises known as Pomander Courts on University Boulevard in Wheaton, Maryland, that the HOC was the owner, manager or "agent" of the property and that the infant plaintiff there sustained personal injuries in a fall resulting from a metal pipe railing giving way when the infant

plaintiff put his weight on it. In its motion raising preliminary objection the HOC asserted sovereign immunity, alternatively as a state agency, or as a local agency exercising totally governmental functions. The appellants, in their reply to the supplemental memorandum of law of the HOC, took the position that the HOC maintained liability insurance and argued that this constituted a recognized exception to the doctrine of sovereign immunity. In order factually to support this position, appellants' counsel filed an affidavit to which were attached copies of correspondence relating to the appellants' claim between counsel and both the Office of the County Attorney [1] and an identified insurance company. Existence of a liability policy insuring the HOC was not controverted. The Circuit Court granted the motion of the HOC and entered judgment for it. This judgment was affirmed by the Court of Special Appeals. *Jackson v. Housing Opportunities Commission of Montgomery County,* 44 Md. App. 304, 408 A.2d 1337 (1979). We issued certiorari.

The Court of Special Appeals concluded that the HOC "is indeed a state agency . . . ." *Id.* at 307, 408 A.2d at 1339. Appellants do not directly challenge that conclusion here. However, in the view which we take of this case, it is unnecessary for us to determine whether the HOC is an agency of the State of Maryland or of Montgomery County. In their petition for certiorari the sole question presented by the appellants was whether there was a waiver of sovereign immunity, either expressed or implied. No contention is made that, if the HOC is an agency of Montgomery County, its functions are proprietary. Our conclusion that there has been a limited waiver of governmental immunity applies whether the HOC is a state agency or an agency of Montgomery County which exercises governmental functions. [2]

---

1. The deputy county attorney referred to the HOC as "a separate state agency with its own insurance coverage."

2. In Mayor and City Council of Baltimore v. Baltimore Gas and Electric Company, 232 Md. 123, 192 A.2d 87 (1963), the utility sought compensation for the relocation of its utility facilities occasioned by the closing of streets for the building, *inter alia,* of a housing project of the Housing Authority of

The genesis in this state of housing authorities is Maryland Laws (1937), Ch. 517 which added to the Code of Public General Laws Art. 44A entitled, "Housing Authorities." This legislation was enacted in anticipation of, and in order to take advantage of, the provisions of the United States Housing Act of 1937, ch. 896, 50 Stat. 888, now 42 U.S.C. §§ 1401-1440 (1976), under which the federal government established a program for slum clearance and low rent housing to be carried out in cooperation with local housing authorities. *See Matthaei v. Housing Authority of Baltimore City,* 177 Md. 506, 9 A.2d 835 (1939). By Art. 44A a housing authority was created in each city having a population of more than 1,000 (§ 4; § 3 (b)) and in each county of the state (§ 23). The state legislation made each housing authority "a public body corporate and politic" but it was necessary for the local authorities to breathe life into each otherwise dormant agency by declaring the need for a housing authority to function in their city or county. *Housing Authority of College Park v. Macro Housing, Inc.,* 275 Md. 281, 282 n.1, 340 A.2d 216, 217 n.1 (1975). Under Ch. 508 of the Acts of 1974 the Housing Authority of Montgomery County was redesignated as the Housing Opportunities Commission of Montgomery County (§ 8A (b)).

Section 2 of the Housing Authorities Law expresses legislative findings that persons of low income are forced to reside in insanitary or unsafe accommodations, and that this condition constitutes a menace to health, safety, morals and welfare and necessitates excessive and disproportionate expenditures of public funds for, *inter alia,* accident

Baltimore City. There we said "that the closing of streets for the building of the housing project by the Housing Authority of Baltimore City is . . . in the same classification" as other activities, such as the building of schools, which "unquestionably were exercises of governmental functions." *Id.* at 131, 192 A.2d at 91. We also said that "[i]t has been generally held that housing projects are governmental." *Id.* at 132, 192 A.2d at 91-92 (citations omitted). Whether a valid distinction lies between the construction of a housing project and its operation, for purposes of a governmental-proprietary classification, if applicable, is likewise a question which is not before us and on which we express no opinion. *Cf.* Virginia Electric and Power Company v. Hampton Redevelopment and Housing Authority. 217 Va. 30, 225 S.E.2d 364 (1976).

protection. An authority has "all the powers necessary or convenient to carry out and [effectuate] the purposes and provisions of" Art. 44A, including, under § 8 (a), the power "[t]o sue and be sued ..." [3] and, under § 8 (d), the power "to insure or provide for the insurance of any real or personal property or operations of the authority against any risks or hazards ...." Section 9 provides that "an authority shall fix the rentals for dwellings in its projects at no higher rates than ... necessary in order to produce revenues which together with all other available moneys ... will be sufficient ... (b) ... to provide for ... operating the projects (including the cost of any insurance) ...." [4] All real property of an authority is exempt from levy and sale under execution, pursuant to § 20 of the Act.[5]

---

3. Art. 44A, § 8 (a) in its entirety reads:
   (a) To sue and be sued; to have a seal and to alter the same at pleasure; to have perpetual succession; to make and execute contracts and other instruments necessary or convenient to the exercise of the powers of the authority; and to make and from time to time amend and repeal bylaws, rules and regulations, not inconsistent with this article, to carry into effect the powers and purposes of the authority.

4. Art. 44A, § 9 in its entirety reads:
   It is hereby declared to be the policy of this State that each housing authority shall manage and operate its housing projects in an efficient manner so as to enable it to fix the rental for dwelling accommodations at the lowest possible rates consistent with its providing decent, safe and sanitary dwelling accommodations, and that no housing authority shall construct or operate any such project for profit, or as a source of revenue to the city. To this end an authority shall fix the rentals for dwellings in its projects at no higher rates than it shall find to be necessary in order to produce revenues which together with all other available moneys, revenues, income and receipts of the authority from whatever sources derived will be sufficient (a) to pay, as the same become due, the principal and interest on the bonds of the authority; (b) to meet the cost of, and to provide for, maintaining and operating the projects (including the cost of any insurance) and the administrative expenses of the authority; and (c) to create (during not less than the six years immediately succeeding its issuance of any bonds) a reserve sufficient to meet the largest principal and interest payments which will be due on such bonds in any one year thereafter and to maintain such reserve.

5. Art. 44A, § 20 in its entirety reads:
   All real property of an authority shall be exempt from levy and sale by virtue of an execution, and no execution or other judicial process shall issue against the same nor shall any judgment against an authority be a charge or lien upon its real property; provided, however, that the provisions of this section

The principles governing whether immunity from suit has been waived were recently restated for this Court by Chief Judge Murphy in *Katz v. Washington Suburban Sanitary Commission,* 284 Md. 503, 397 A.2d 1027 (1979). A court should not hold that immunity has been waived except in cases of positive consent given, or by necessary and compelling implication. Any waiver of immunity must come from the Legislature whose intent we strive to effectuate. The test is two pronged. An asserted waiver of immunity is ineffective "unless specific legislative authority to sue the agency has been given, and unless there are funds available for the satisfaction of the judgment, or power reposed in the agency for the raising of funds necessary to satisfy a recovery against it." *Id.* at 513, 397 A.2d at 1033.

In its application of these principles, the Court of Special Appeals compared the provisions of the Housing Authorities Law to the express waivers found in Md. Code (1957, 1978 Repl. Vol.), Art. 41, § 10A (state contracts), in Md. Code (1957, 1973 Repl. Vol., 1980 Cum. Supp.), Art. 25A, § 5 (CC) (express power to chartered counties to effect a limited waiver in tort actions) and § 4-105 of the Education Article (immunity of county boards of education waived to the extent of minimum required liability coverage). It concluded that "while the Legislature may have intended to waive sovereign immunity when it granted the right to sue and be sued to the [HOC], . . . that grant was in and of itself insufficient . . . to effect such a waiver either expressly or by implication. Nor did the grant of authority to purchase insurance accomplish a waiver of sovereign immunity." 44 Md. App. at 316, 408 A.2d at 1343. We disagree that the Housing Authorities Law merely authorizes the purchase of insurance. Our different analysis produces a different result.

---

shall not apply to or limit the right of obligees to foreclose or otherwise enforce any mortgage of an authority or the right of obligees to pursue any remedies for the enforcement of any pledge or lien given by an authority on its rents, fees or revenues; and provided, further, that the provisions of this section shall not deprive any city or county of its right to collect any service charge agreed upon in lieu of taxes in the same manner as all such taxes are now, or may hereafter be, collectible under the laws of this State and of said cities or counties.

The first prong of an effective waiver of sovereign immunity is clearly satisfied in this case. A housing authority has power "[t]o sue and be sued." § 8 (a). The power is unqualified. The same power is conferred on trustees of community colleges by Md. Code (1978), § 16-203 (K) of the Education Article (formerly Art. 77A, § 1 (*l*-1)), which was considered in *Board of Trustees of Howard Community College v. John K. Ruff, Inc.,* 278 Md. 580, 590, 366 A.2d 360, 366 (1976) where we concluded

> that when the General Assembly expressly authorizes suits to be brought against one of the State's agencies, it is the giving of a positive consent and has the effect of waiving sovereign immunity as to that agency within its scope of duties and obligations. It does not necessarily follow, however, that a money judgment may therefore be obtained . . .

The HOC, however, argues that defending suits for personal injuries or death arising out of an alleged negligent failure to keep premises in a safe condition is not within the scope of the duties and obligations of a housing authority. For this proposition it relies primarily on *Weddle v. School Commissioners,* 94 Md. 334, 51 A. 289 (1902), in which the statute involved provided that boards of county school commissioners "shall be capable to sue and be sued." *Weddle* held that the statute restricted liability to suits against school boards "in respect to matters within the scope of their duties and to such things as the boards are empowered to do," but that there was "no power given the Boards of School Commissioners to raise money for the purpose of paying damages, nor are they supplied with means to pay a judgment against them." *Id.* at 344, 51 A. at 291. In *Ruff,* we reviewed *Weddle* and found implicit that "had the action concerned matters within the scope of the Board's duties and involved such things as it was empowered to do, sovereign immunity would not have been a defense." 278 Md. at 589, 366 A.2d at 365. *Katz, supra,* places the HOC's contentions

in perspective. The Washington Suburban Sanitary Commission legislation gives that corporation the right "to sue and be sued, and to do any and all other corporate acts for the purpose of carrying out the provisions" of the legislation. As the HOC here argues, such language "does not alone constitute a general waiver of immunity." *Katz v. Washington Suburban Sanitary Commission, supra,* 284 Md. at 513, 397 A.2d at 1032. Rather, we said, "it is limited to such matters, *as those involved in the instant appeals,* necessary to carry out the purpose for which the agency was created. *O & B, Inc.* [*v. Maryland-Nat'l Capital Park and Planning Commission,* 279 Md. 459, 369 A.2d 553 (1977)]; *Lohr v. River Commission,* 180 Md. 584, 26 A.2d 547 (1942); *Weddle v. School Commissioners,* 94 Md. 334, 51 A. 289 (1902)." 284 Md. at 513, 397 A.2d at 1033 (Emphasis supplied). All of the matters involved in the appeals in *Katz* were property damage tort claims, including a claim arising out of the bursting of a water main and a claim asserting that rocks and debris had been allowed to enter the sanitary commission's fire hydrants with the result that fire department pumps became clogged when used to fight a fire. In the instant matter an express purpose for the creation of housing authorities is to provide "safe and sanitary dwelling accommodations for persons of low income . . . ." Md. Code (1957, 1980 Repl. Vol.), Art. 44A, § 2. The theory of liability here asserted is that the HOC negligently failed to maintain the premises of a housing project. We see no difference between the alleged failure of the Washington Suburban Sanitary Commission to maintain its water mains and fire hydrants, and the theory of the instant case. Each deals with a matter within the purposes of the agency and each presents a claim within the authorization of the agency to be sued. Further, the provisions of the Housing Authorities Law relating to insurance, discussed below as the source of payment, reinforce the conclusion that the consent to be sued includes negligence actions arising out of housing authority operations.

Article 44A, § 8 (d) includes an authorization for a housing authority to purchase insurance. The HOC argues,

and the Court of Special Appeals concluded, on the authority of *Quecedo v. Montgomery County,* 264 Md. 590, 287 A.2d 257 (1972), that this authorization is insufficient to meet the second requirement, *i.e.,* availability of funds for the satisfaction of a judgment. We see the insurance provisions of Art. 44A not as a mere authorization, but as a mandate, so that the rule of *Quecedo* does not apply here.

*Quecedo* was an action for damages based upon an alleged assault and battery by a Montgomery County police officer. Dismissal of the action on a motion raising preliminary objection based on sovereign immunity grounds was affirmed. The declaration alleged that Montgomery County was insured under a liability policy carrying an endorsement under which the insurer agreed not to raise the immunity defense in any claim against the county. Judge Barnes, writing for this Court, applied the general rule that the procurement of liability or indemnity insurance by a governmental unit has no effect upon its immunity for tort liability. He quoted from the opinion of Judge Chesnut in *Jones v. Scofield Bros.,* 73 F. Supp. 395, 398 (D. Md. 1947) which stated that the " 'generally prevailing view seems to be that [the] mere existence [of indemnifying insurance] is not sufficient to create liability in tort unless the legislative enactments creating the agency or corporation considered as a whole, lead to the conclusion that it was the intention of the Legislature to impose such liability on the agency or corporation.' " *Quecedo v. Montgomery Co., supra,* 264 Md. at 595, 287 A.2d at 259. There was in *Quecedo* "no applicable statutory provision to the contrary" of the rule that merely carrying insurance did not waive immunity. *Id.* at 596, 287 A.2d at 260. *Jones* rejected on immunity grounds a third party claim against the State Roads Commission of Maryland in a damage action for personal injuries suffered on a ferry boat operated by the Commission under the authority of Chapter 856 of the Acts of 1941, Md. Code (1939, 1947 Supp.), Art. 89B, §§ 140A to 140M. The third party claim alleged that the Commission had purchased liability insurance which provided that the Commission could

require the insurer to waive the defense of immunity that might otherwise be interposed. Section 140E permitted the trust indenture securing the bonds which financed state acquisition of the ferry boat service to contain provisions for bondholder protection, including covenants relating to insurance. However, the statutes involved in *Jones* did not even contain an express legislative permission to sue the Commission.

Here the relevant statute both authorizes [6] and mandates the purchase of insurance. Significantly, the authorization to purchase insurance in § 8 (d) applies not only to insurance "of any real or personal property" of the HOC, but also to "operations of the authority" and the authorized insurance may be "against any risks or hazards . . . ." Had the statute simply referred to insurance, the reference arguably could have been limited to property insurance. However, the express inclusion of insurance relating to operations clearly manifests the legislative contemplation that liability insurance would be purchased as well. This authorization is

---

**6.** There is a split of authority as to the effect on immunity of a statute which simply authorizes the purchase of insurance unaccompanied by additional statutory elements. Typical additional statutory elements include a prohibition against the insurer pleading immunity, a requirement that any policy purchased contain a provision for the insurer to waive the defense of immunity, an express statement that immunity is waived or a statement that the defense of immunity is preserved as to recoveries which exceed the amount of insurance. Decisions which hold a simple statutory authorization to purchase insurance effects a waiver of liability include Geislinger v. Watkins, 269 Minn. 116, 130 N.W.2d 62 (1964); Schoening v. United States Aviation Underwriters, Inc., 265 Minn. 119, 120 N.W.2d 859 (1963); Jeffery v. Johnson, 23 Ohio Misc. 338, 52 Ohio Ops.2d 350, 260 N.E.2d 627 (1970); and Vendrell v. School District No. 26C, 226 Or. 263, 360 P.2d 282 (1961). Cases which hold the mere authorization to purchase insurance does not effect a waiver of the immunity defense include Valdez v. State Road Dept., 189 So.2d 823 (Fla. App. 1966); McGrath Bldg. Co. v. City of Bettendorf, 248 Iowa 1386, 85 N.W.2d 616 (1957); and Michael v. School District, 391 Pa. 209, 137 A.2d 456 (1958). There is also a class of decisions in which the statute authorizes the purchase of insurance for the express purpose of protecting employees of the agency. Decisions involving that type of statute have held that there is no waiver of the immunity defense as to the agency. *See* Reeves v. City of Jackson, 608 F.2d 644, 654 n.6 (5th Cir. 1979); Anderson v. Calamus Community School District, 174 N.W.2d 643 (Iowa 1970); Chambers v. Ideal Pure Milk Co., 245 S.W.2d 589 (Ky. 1952); Celata v. Larcom, 46 Mass. App. Dec. 160 (1971); Hale v. Smith, 254 Or. 300, 460 P.2d 351 (1969); and Utz v. Board of Education, 126 W. Va. 823, 30 S.E.2d 342 (1944).

moved a step farther in § 9 where it is provided that the authority "shall fix the rentals" at rates "sufficient . . . (b) to meet the cost of, and to provide for, maintaining and operating the projects (including the cost of any insurance) . . . ." The term "insurance" as used in § 9 must bear the same meaning as its use in § 8 (d) and include liability insurance. Thus, the cost of operating a project expressly includes the cost of liability insurance, and rentals "shall" be fixed to include that cost. The legislative directive labeled "(b)," that the authority "shall fix" the rents at levels sufficient to include the cost of liability insurance, is clearly mandatory because the cost of liability insurance in the rental rate structure is placed on a parity with the directives labeled "(a)" and "(c)," to include in the rate structure amounts sufficient to pay the principal and interest on bonds of the authority as the same become due, and to create a reserve for principal and interest payments on authority bonds.

· An analogous question was presented to the Supreme Court of Montana in *Longpre v. Joint School District No. 2,* 151 Mont. 345, 443 P.2d 1 (1968). The statute there involved related to the operation of school buses. It contained no express waiver of sovereign immunity but provided that a school district "owning and operating its own bus or buses, must carry automobile bodily injury and liability insurance, with limits of liability in the amount of not less than $7,500.00 each person and $50,000.00 each accident." After reviewing many of the decisions on the effect of insurance, the court observed:

> In the instant case this Court is faced with a situation dissimilar from any it has encountered in its searches. In all the cases found the statutes therein were of a permissive nature; that is, the governmental units were authorized to purchase liability insurance. However, the Montana statute . . . is worded in mandatory language . . . . [*Id.* at 349-50, 443 P.2d at 3.]

That court held that immunity was waived to the extent of insurance required to be carried or actually carried. It reasoned as follows:

> Since it is clear that the liability insurance, which [the statute] requires school districts to carry, was meant to cover injuries arising from the operation of school buses, this Court fails to see how it can be argued that the Legislature would require insurance to be carried and then deny any means of recovery to an individual injured in connection with the operation of a school bus. We do not think that the Legislature would, on one side, require school districts to purchase liability insurance, and then on the other side, deny any means of recovery to one injured, otherwise the Legislature would simply have meant to enrich insurance companies. This cannot be. [*Id.* at 351, 443 P.2d at 4.]

We agree that a legislative mandate to carry liability insurance is a strong indication of legislative intent that sovereign immunity is waived to the extent of the insurance.

The HOC has argued, in connection with its contention that the Housing Authorities Law's insurance provisions are merely permissive, that there may well be reasons for a governmental agency carrying liability insurance other than a waiver of sovereign immunity. These include obtaining the insurer's services in defending suits, uncertainty in the law as to whether a particular activity enjoys the immunity defense, and protection of the individual employees of the agency from personal liability. *See* Gibbons, *Liability Insurance and the Tort Immunity of State and Local Government* (1959) Duke L.J. 588; Note, *Insurance-Governmental, Charitable, and Intra-Family Immunity from Tort Liability — Effect of Insurance on — Obligation of Insurer,* 33 Minn. L. Rev. 634 (1949). We need not decide here the merits of that contention, even in the context of statutorily mandated insurance coverage, because the Housing Opportunities Law presents an additional ele-

ment. Section 20 of Art. 44A provides that "[a]ll real property of an authority shall be exempt from levy and sale by virtue of an execution, and no execution or other judicial process shall issue against the same nor shall any judgment against an authority be a charge or lien upon its real property . . . ." The General Assembly unmistakably contemplated that judgments would be entered against a housing authority. This provision is inconsistent with the notion that the mandated liability coverage is solely for purposes of claims investigation and adjustment with the right reserved in the insurer to assert on behalf of the housing authority the defense of sovereign immunity which would prevent the entry of any judgment against the authority.

Nor do we find the absence of minimum policy limits in the Housing Authorities Law to be a bar to the waiver of immunity. Indeed, a waiver of immunity only to the extent of statutorily unspecified liability insurance coverage is what occurs with respect to charitable immunity under Md. Code (1957, 1979 Repl. Vol.), Art. 48A, § 480.

Thus, the means for the agency paying at least part of a judgment in a tort action are present here. The liability insurance policy furnishes a fund from which to pay up to its applicable limits and the legislature has provided a housing authority the means with which to create and maintain that fund by requiring that the cost of liability insurance be included in the rent structure.

We hold that the combination of statutory provisions presented here effects, by necessary and compelling implication, a limited waiver of the defense of sovereign immunity to the extent of permitting recovery only out of any sum payable on behalf of the HOC by its insurer under applicable liability coverage. This result is entirely consistent with *Barnes v. Housing Authority of Baltimore City*, 231 Md. 147, 189 A.2d 100 (1963) and with *Lee v. Housing Authority of Baltimore City*, 203 Md. 453, 101 A.2d 832 (1954). Those appeals arose out of tort actions against a housing authority for damages for personal injuries and

wrongful death but neither the opinions nor the record extracts reflect that the defense of sovereign immunity was asserted by experienced insurance defense counsel.

*Judgment of the Court of Special Appeals reversed.*

*Case remanded to that court with instructions to reverse the judgment of the Circuit Court for Montgomery County and to remand the case to the Circuit Court for Montgomery County for further proceedings consistent with this opinion.*

*Cost to be paid by the appellee.*