## ROGER E. HOLTMAN & ASSOCIATES, LTD. v. STATE OF MARYLAND, DEPARTMENT OF GENERAL SERVICES

[No. 1685, September Term, 1981.]

*Decided July 14, 1982.*

The cause was argued before GILBERT, C. J., and THOMPSON, J., and W. ALBERT MENCHINE, Associate Judge of the Court of Special Appeals (retired), specially assigned.

*H. Patrick Stringer, Jr.,* with whom was *Edward L. Blanton, Jr.,* on the brief, for appellant.

*Paul S. Sugar, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *Allan B. Blumberg* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Roger E. Holtman & Associates, Ltd., appellant, filed a petition for confirmation of an arbitration award in the Cir-

cuit Court for Baltimore County against the State of Maryland, Department of General Services (State), appellee. The State filed a motion raising preliminary objection on the ground of sovereign immunity. On December 2, 1981, the trial court, sitting in equity, granted appellee's motion and dismissed appellant's action with prejudice.

Appellant raises the following issues:

I.  Whether the State is cloaked with sovereign immunity in a suit to confirm an arbitration award predicated upon breach of a post-July 1, 1976 letter contract, where all services required under a pre-July 1, 1976 contract with appellant's predecessor had been completed.

II.  Whether the State is cloaked with sovereign immunity in a suit to confirm an arbitration award based on breach of contract, where all of the damages claimed are predicated on a breach of an "extension" of a contract executed after July 1, 1976.

On May 26, 1971, Roger E. Holtman, in an individual capacity, entered into a written contract with the State of Maryland, Department of Public Improvements in which Holtman agreed to perform landscape architectural services for the State on the campus of Towson State College. The contract provided that Holtman was to "Develop Schematic Plans for Phase I of the Educational Street Concept" and for these services he would receive a fee not exceeding $5,000. By October 1971, Holtman had completed the services required and received full compensation for this work. On October 13, 1972, Holtman executed, by letter, a second agreement with the State described as an "Extension" of the 1971 contract and given the same job number, XT 6-7101. By October 1974, all of the work that Holtman could do for the agreed upon consideration had been accomplished.

On November 9, 1976, Roger E. Holtman, President, on behalf of Roger E. Holtman & Associates, Ltd., entered into a

new contract with the State providing for a fee of $40,373 and entailing the following services: [1]

> "Preparation of detailed plans and specifications for revisions and completion of contract documents turn-arounds at four locations, retaining walls, pathways, plaza paving, amphitheatre, Cook Library forecourt, overall landscaping, site grading, area lighting, benches and street furniture, including bidding phase for work, and supervision of project work, shop drawing inspection and project follow-up required by consultants, and as-built topographic survey."

According to the uncontested affidavit of the appellant, the 1976 services did not entail use of the 1971 or 1972 designs in that the 1976 services were based upon a land survey which was unavailable in prior years. This latter agreement was given a new "job number" and did not incorporate any of the terms or conditions of the previous contracts. The only evidence of an intent to view this contract as an extension of the prior agreement was the inclusion of a request by the state to consider it an "extension" of the 1972 contract. Appellant thereafter performed the services called for in the contract, later valued at $88,991.43 of which the State has paid $9,873. A dispute arose as to the non-payment of fees and both parties agreed to submit their claims to arbitration. The arbitrator awarded the appellant the sum of $64,587.50 which the State had declined to pay, claiming sovereign immunity.

The doctrine of sovereign immunity bars a litigant from asserting an otherwise meritorious cause of action against the State unless the legislature waives it either expressly or by necessary and compelling implication. *Jackson v. Housing Opp. Comm'n.*, 289 Md. 118, 422 A.2d 376 (1980). By Chapter 450 of the Acts of 1976, the Maryland Legislature waived the defense of sovereign immunity in contract

---

1. Some time after the 1972 contract was entered into, Roger E. Holtman incorporated and became the entity of Roger E. Holtman & Associates, Ltd.

actions. Section 6 of Chapter 450 exempted from the waiver any action based on a contract entered into or executed prior to July 1, 1976. The waiver is presently codified in Md. Code Ann. Art. 21, § 7-101 (1957), (1981 Repl. Vol.). In the present case, the State claims that the 1976 agreement was merely an extension of that entered into in 1971 and 1972 and thus is not subject to the legislative waiver of sovereign immunity.

The State argues that the instant case is controlled by *John McShain, Inc. v. State,* 287 Md. 297, 411 A.2d 1048 (1980). In that case, the John McShain Construction Company entered into a contract in May 1974 to erect a building for the University of Maryland. Beginning in May 1975 the contract was modified to a series of "change orders" each of which provided that "All work proposed herewith shall be done pursuant to the terms and conditions of the existing contract between [the parties] and, except as modified herein, the contract remains in full force and effect." *Id.* at 299. Between July 1, 1976 and October 17, 1978, a total of 18 "change orders" were executed. Some time thereafter, the construction company brought suit seeking damages for breach of contract; however, none of the damage claims were based on the "change orders" effectuated after July 1, 1976. The corporation argued that each time the parties agreed to modify the original contract through a "change order" a new contract was formed. The trial court rejected this contention and thereafter granted the State's motion raising preliminary objection on the ground of sovereign immunity. The Court of Appeals affirmed stating:

> "Where, as here, the action is based on a contract which was executed prior to July 1, 1976, and none of the damages claimed are predicated on an alleged breach of a provision of the contract inserted by amendment after July 1, 1976, it is manifest that the defense of sovereign immunity may properly be asserted consistent with the dictates of § 10A." *Id.* at 301.

We do not see the controlling effect of *John McShain, Inc.* Here, the November 1976 agreement did not involve a mere modification of, or extension of time to perform, the 1971 or 1972 contracts; these prior agreements had been completely performed and compensated in full by 1974. We also note: First, the 1971 contract entailed the development of "schematic plans for phase I of the 'concept' stage of the project." The 1972 contract provided, without further detail, "to proceed on the above-referenced project. . ." acknowledging and referring to the prior project number. The 1976 contract, however, provided a detailed description of the project which made no specific mention of incorporating the 1972 drawings or plans. Second, while the 1971 and 1972 agreements were both given the same job number, the 1976 agreement was referenced under a new job number. Third, the parties involved in the various projects differed; the prior contracts being entered into between the State and Roger E. Holtman, while the latter was between the State and Roger E. Holtman & Associates, Ltd. The State's insertion of the word "extension" to the 1976 agreement reveals more of an attempt to retain the sovereign immunity defense than to extend the prior contracts in good faith. The mere use of the term "extension" does not change the essential nature of the 1976 agreement, that being a separate and distinct contract.

We do not condone the State's attempt to hide behind the skirts of sovereign immunity to avoid what appears to be a lawfully incurred obligation. We, therefore, reverse the finding of the lower court and remand for a hearing as to the confirmation of the arbitration award.

*Decree reversed.*
*Appellee to pay the costs.*