**Gen. 19]**                                                                                       **19**

## HOUSING

**PUBLIC HOUSING AUTHORITIES – OUT-OF-STATE ENTITIES – ADMINISTRATION OF FEDERAL SECTION 8 PROGRAM**

May 31, 2012

*Raymond Skinner, Secretary*
*Maryland Department of Housing*
  *and Community Developm*ent

You have asked for our opinion as to whether an out-of-state public housing agency, or an instrumentality thereof, may operate as a public housing agency in Maryland. More specifically, you have presented the following facts and question: A state or local government outside of Maryland creates a legal entity to act as an instrumentality of that government. In the state where the legal entity is created, it has authority to act as a "public housing agency," as that term is defined by the United States Housing Act of 1937. *See* 42 U.S.C. § 1437a(b)(6)(A) (2006). The legal entity has also registered or qualified to conduct business in Maryland. *See* Md. Code Ann., Corps. & Ass'ns §§ 7-202, 7-203 (2011 Supp.). Does Maryland law authorize the out-of-state public housing agency or its legal instrumentality to act as a "public housing agency" within Maryland?

In our opinion, an out-of-state public housing agency or its legal instrumentality may not operate as a public housing agency within Maryland. The administration of public housing programs within Maryland constitutes an essential governmental function that only the Department of Housing and Community Development ("DHCD"), established under Division I of the Housing and Community Development Article of the Maryland Annotated Code (the "Housing Act"), and "public housing authorities" ("PHAs") established under Division II of the Housing Act, may perform.[1]

---

[1] We caution the reader not to confuse the terms "public housing *agency*," which is a federal statutory term that relates to eligibility to administer the Section 8 program generally, and "public housing *authority*," which is a Maryland statutory term that relates to the

(continued. . .)

An out-of-state public housing agency or its instrumentality, regardless of whether the instrumentality was properly formed under the general corporate laws of Maryland or another state, cannot qualify as a public housing authority under Maryland law.

We also address a second question that, although not specifically asked in your request for our opinion, relates to the requirements of federal law, namely, whether DHCD and PHAs authorized to act as "public housing agencies" within Maryland may exercise their authority on a statewide basis, as opposed to being limited to certain political subdivisions of the State. On this point, we conclude that only DHCD and PHAs created by Baltimore City or a Maryland municipality are empowered to act as "public housing agencies" on a statewide basis throughout Maryland. A PHA established by a Maryland county may administer rent subsidy payments and housing assistance programs only within its county.

# I

## Background

This request arises out of the U.S. Department of Housing and Urban Development ("HUD") 2011 solicitation of applications from entities wishing to serve as the administrator of the federal Section 8[2] project-based housing assistance program (the "Program") for one or more of the states, including Maryland. *See* HUD, Invitation of Submission of Applications: Contract Administrators for Project Based Section 8 Housing Assistance Payments ("HAP") Contracts (March 23, 2011), *available at* http://portal.hud.gov/hudportal/documents/huddoc?id=invitationfor appsfinal.pdf (last visited May 23, 2012) (the "Solicitation"). The entities selected by HUD to administer the Program within the states are referred to as "Performance Based Contract Administrators" or "PBCAs." A PBCA disburses federal funds allocated for rental assistance to low income residents at approved

---

authority to administer federal rental assistance programs within Maryland.

[2] "Section 8" refers to § 8 of the Housing Act of 1937, 42 U.S.C. § 1437f, but generally refers to a number of statutory provisions, 42 U.S.C. §§ 1437a, 1437c, 1437f, 3535(d), 12701, and 13611-19, and the regulations promulgated thereunder at 24 C.F.R. §§ 880-888 (2012).

housing projects. In order to fund the administration of the Program, the PBCA retains a percentage—agreed upon by the PBCA and HUD—of the federal funds it disburses. Under the terms of the Solicitation, the PBCA would serve for a term of three years.

In order to be eligible to administer the Program, an entity must qualify as a "public housing agency," which is defined under federal law as "any State, county, municipality or other governmental entity or public body (or agency or instrumentality thereof) which is authorized to engage in or assist in the development or operation of public housing." 42 U.S.C. § 1437a(b)(6)(A). Traditionally, the applicant pool for qualification as a PBCA was dominated by state housing agencies, like DHCD, that have state-law authority over housing-related matters within their own state. DHCD has served as the PBCA for Maryland continuously since 2000.

In response to the Solicitation, however, certain "out-of-state" public housing agencies or their legal instrumentalities applied to administer the Program in states other than the states in which they were formed. HUD acknowledged this type of applicant in the Solicitation, and required an applicant who proposed to serve as a PBCA in a state other than the state of its organization to provide a "supplemental letter" from an attorney containing a "reasoned (i.e. non-conclusory) analysis establishing that the laws of the State in which the applicant proposes to serve as PBCA do not prohibit the applicant from acting as a [public housing agency] throughout the entire State." Solicitation, §§ 2.1, 2.6. The Solicitation also required that the supplemental letter contain "a clear statement that such laws neither explicitly nor implicitly prohibit the applicant from acting as a [public housing agency] throughout the entire State." *Id*.

In 2011, DHCD submitted a bid in response to the Solicitation, but was not selected as the PBCA for Maryland. Instead, HUD selected Summit Multi-Family Housing Corporation—a non-profit instrumentality of the Akron (Ohio) Metropolitan Housing Authority—to serve as the PBCA for Maryland. It is our understanding that out-of-state entities were selected to serve as PBCAs in several other states as well.

DHCD, along with numerous other state housing agencies involved in the Solicitation, filed protests to the awards on several different grounds, including that awards were made to out-of-state

instrumentalities.  In response, HUD cancelled the disputed awards and issued a Notice of Funding Availability on February 29, 2012, re-opening the application process for the PBCAs in certain states, including Maryland.  *See* HUD's Fiscal Year (FY) 2012 Notice of Funding Availability (NOFA) for the Performance-Based Contract Administrator (PBCA) Program for the Administration of Project-Based Section 8 Housing Assistance Payments Contracts (Feb. 29, 2012), *available at* http://portal.hud.gov/hudportal/documents/ huddoc?id=pbcanofafinal.pdf (last visited May 23, 2012) ("NOFA").  HUD stated in the NOFA that it would "consider applications from out-of-State applicants only for States for which HUD does not receive an application from a legally qualified in-State applicant."  NOFA § D.

HUD included within the NOFA separate eligibility provisions for in-state applicants (*i.e.*, a governmental entity, or instrumentality thereof, "formed under the laws of the same State for which it proposes to serve as a PBCA," NOFA § E.1) and out-of-state applicants (*i.e.*, an instrumentality "formed under the laws of a State other than the State for which it proposes to serve as a PBCA," NOFA § E.2).[3]  Under these eligibility provisions, in-state applicants must demonstrate that they have "the legal authority to operate throughout the entire State."  NOFA § E.1.b.  An out-of-state applicant, by contrast, must demonstrate that it "has the legal authority, both under the law of the State of its creation and under the law of the State for which it is applying to act as PBCA, to operate throughout the entire State for which is applying."  NOFA § E.2.b.  *All* applicants must demonstrate that they satisfy the definition of "public housing agency" set forth in the federal housing act.

HUD has subsequently indicated that, in evaluating whether an out-of-state entity has the authority to operate as a public housing agency in the state for which it is applying, it will consider the opinion of the Attorney General of the applied-for state and

---

[3]  According to HUD, out-of-state applicants typically consist of an instrumentality of an out-of-state public housing agency because the governmental entities themselves "are typically limited in their area of operation under the law of the State of their creation to the locality or to the State that they were established to serve."  NOFA § E.2.  Because the conclusions reached in this opinion apply equally to out-of-state governmental agencies and the instrumentalities they may form, we will use the term "out-of-state entity" to refer to both entities.

that, "[t]o the extent that the Attorney General's opinion is on-point and has considered all the relevant facts about any potential in-state applicants (e.g., instrumentalities), HUD will rely on a state's Attorney General's opinion."  HUD, NOFA for PBCAs and ACC for NOFA Q&A (Update as of 05/11/2012), Response to Question No. 163, *available at* http://portal.hud.gov/hudportal/documents/huddoc?id=pbcanofaaccqandasumm.pdf (last visited May 22, 2012) ("NOFA Q&A").  You have asked for this opinion in anticipation of HUD's reliance on the same.

## II

### Analysis

#### A.    *Whether an Out-of-State Public Housing Agency or its Instrumentality May Serve as a Public Housing Authority in Maryland*

An out-of-state public entity may not serve as a public housing authority in Maryland even if it has registered to do business in Maryland and is authorized by its state of origin "to engage in or assist in the development or operation of public housing," as allowed under federal law, 42 U.S.C. § 1437a(b)(6)(A).  As set forth below, only DHCD or a PHA created by a Maryland political subdivision may administer federal rental assistance programs within Maryland.  This conclusion flows from the Housing Act, which establishes a comprehensive legal framework for the administration of public housing in Maryland.

The Housing Act is the result of the merger of two previously existing statutes.  Article 44A of the Maryland Annotated Code (the "Housing Authorities Act") was enacted in 1937 "in anticipation of, and in order to take advantage of, the provisions of the United States Housing Act of 1937. . . ."  *Jackson v. Hous. Opportunities Comm'n of Montgomery Cnty.*, 289 Md. 118, 121 (1980), *overruled in part by Brooks v. Hous. Auth. of Baltimore City*, 411 Md. 603 (2009); *see also* 1937 Md. Laws, ch. 517.  The Housing Authorities Act established a housing authority in each city having a population of more than 1,000 and in each Maryland county.  *Jackson*, 289 Md. at 121.  Each authority was deemed "a public body corporate and politic" and given "all the powers necessary or convenient to carry out and [effectuate] the purposes and provisions of [the Act]. . . ."  *Id*., 121-22; *see also Brooks*, 411 Md. at 617-18.

The second of the merged statutes was enacted in 1970, when, finding that "a need exists to coordinate and concentrate federal, state, regional and local public and private community development efforts and resources," the Maryland General Assembly created the Community Development Administration ("CDA") as a division within the newly-created Maryland Department of Economic and Community Development ("DECD")—a "principal department of the State Government," 1970 Md. Laws, ch. 527 at 1215, and the predecessor to the present-day DHCD. CDA was tasked with, among other things, the responsibility to oversee the administration of community assistance programs in Maryland. *Id*. at 1241-48. Maryland State government was reorganized in 1987, at which time DECD was abolished, and CDA and its functions were transferred, along with other housing and community development programs, to the then newly-created DHCD. 1987 Md. Laws, ch. 311. The statutory provisions relating to DHCD were later re-codified as Division I of the Housing Act in 2005, 2005 Md. Laws, ch. 26, with the Housing Authorities Act re-codified as Division II of the Housing Act the next year. 2006 Md. Laws, ch. 63; *see Mitchell v. Hous. Auth. of Baltimore City*, 200 Md. App. 176, 187 (2011). Thus, the Housing Act now contains two divisions: Division I, Housing and Community Programs, which provides for the establishment, powers, and duties of DHCD, Md. Code Ann., Hous. & Comm. Dev. §§ 1-101 to 11-106,[4] and Division II, Housing Authorities, which provides for the establishment, powers and duties of PHAs, §§ 12-101 to 23-101.

*Division I: Maryland Department of Housing and Community Development*

Division I gives DHCD broad authority to engage or assist in the development or operation of housing, including public housing, in Maryland. As a "principal department of State government," the Department has the authority to operate and exercise the authority of the State throughout Maryland. *See* § 2-101; Md. Code Ann., State Gov't § 8-201 (2009 Repl. Vol.) (enumerating the principal departments of State government); *see also* §§ 2-102(1), 2-102(5), 2-102(8) (requiring DHCD to assist "political subdivisions" throughout the State) *and* § 4-211(a)(1) (requiring DHCD to "assist

---

[4] All statutory references refer to the Housing and Community Development Article of the Annotated Code of Maryland, unless otherwise provided.

the Governor in coordinating the activities of governmental units of the State that affect the solution of community development problems and the implementation of community plans"). DHCD is responsible for working with political subdivisions to develop solutions to common problems, serves as a clearinghouse for information and materials on sound community assistance, provides consultative, training and education services to political subdivisions and local public agencies, and accepts gifts, grants, contributions or loans of money. *See generally* § 2-102.

DHCD has the statutory authority to "administer federal programs" relating to community assistance in Maryland, §§ 2-102(9), 1-101(b), and, through its Community Development Administration, has a broad range of other powers related to affordable housing, including the authority to "do all things necessary to qualify for assistance . . . as a public housing agency under a federal housing or renewal program." § 4-211(a)(8). These statutorily conferred powers qualify DHCD as a public housing agency within the meaning of 42 U.S.C. § 1437a(b)(6)(A), and confer on DHCD the authority to operate and act as a public housing agency throughout the entire State. DHCD has served as the PBCA for Maryland since 2000 and at no point has HUD or any party questioned DHCD's qualifications to serve as a PBCA by virtue of its status as a public housing agency capable of acting throughout Maryland.

### *Division II: Local Public Housing Authorities*

Division II of the Housing Act relates to public housing authorities established at the local level. Like Division I, Division II was established to further the "public interest," § 12-102(9), based on findings of the Maryland legislature that there is a "shortage of safe or sanitary housing that is available at rents that individuals of low and moderate income can afford," § 12-102(2), and a public need to eliminate unsafe, unsanitary, and overcrowded living conditions in Maryland. *See generally* § 12-102. Division II provides for the establishment of a PHA for each "county or municipal corporation of the State" and gives each PHA the authority to "do all that is necessary or desirable to secure the financial aid or cooperation of political subdivisions, State government or federal government to help the authority undertake, construct, maintain or operate a housing project." § 12-103. It provides for the establishment of two types of public housing authorities: "code authorities," which are defined to mean "an authority activated on or after July 1, 1990," § 12-101(f), and "pre-

existing authorities," which are those authorities "activated before July 1, 1990." § 12-101(r). Each PHA—whether code or pre-existing—is a "public body corporate and politic" that "exercises public and essential governmental functions." § 12-501(1).

Although the Housing Act "enabl[es]" a "political subdivision to authorize an authority to operate," § 12-202, a Maryland political subdivision must "breathe life into each otherwise dormant agency by declaring the need for a housing authority to function in their city or county." *Jackson*, 289 Md. at 121; *see also Hous. Auth. of College Park v. Macro Housing, Inc.*, 275 Md. 281, 282 n.1 (1975). In addition to declaring the need for a local housing authority, a Maryland political subdivision "breathe[s] life" into an authority by approving the formation of the authority, appointing its commissioners, and overseeing the finances of the PHA. A code authority (*i.e.*, an authority created after July 1, 1990) "may not do business or exercise its powers unless its articles of organization have been recommended in writing by the chief elected official, adopted by a resolution or ordinance of the legislative body, and filed with the Secretary of State," who must then "issue[] a certificate of organization to the code authority." § 12-203.[5] The chief elected official also must "appoint the required number of commissioners of the authority," whether the authority is a code authority or a pre-existing authority. § 12-302(a).

The "chief elected official" and "legislative body" that must approve the creation of the authority and appoint its commissioners are officials of the "political subdivision." § 12-101(e), (*l*). Although out-of-state public housing agencies or their instrumentalities may also have been created by political subdivisions, the term "political subdivision" in the Housing Act is defined as a "county or municipal corporation *of the State*." § 12-101(q) (emphasis added). Case law and common sense confirm that the phrase "of the State" conveys the meaning that the county or municipality be "locat[ed] . . . within State borders." *Bausch &*

---

[5] A pre-existing authority may continue to operate without having a local government adopt articles of organization, but only if it was "activated" by the local government subdivision prior to July 1, 1990. § 12-101(r). Although the term "activated" is not defined by statute, we interpret it consistently with *Jackson* to mean that the local political subdivision must "breathe life" into the authority by "declaring the need for a housing authority to function in their city or county." *Jackson*, 289 Md. at 121.

*Lomb, Inc. v. Utica Mut. Ins. Co*., 330 Md. 758, 786 (1993). Accordingly, an out-of-state public housing agency or its instrumentality formed to serve as a PBCA would not qualify under Maryland law as a public housing authority, and therefore would not be capable of serving as a PBCA in Maryland.

This conclusion is consistent with other statutory provisions and court decisions confirming that housing authorities in Maryland carry out "essential governmental functions" and are treated as governmental entities for a number of purposes. Section 12-501 establishes the principle that a housing authority within Maryland "is a public body corporate and politic that . . . exercises public and essential governmental functions." § 12-501 (internal enumeration omitted); *Mayor of Baltimore v. BGE*, 232 Md. 123, 131 (1963) (same); *see also Gibson v. Hous. Auth. of Baltimore City*, 142 Md. App. 121, 128, *cert. denied*, 369 Md. 182 (2002), *vacated on other grounds sub nom Hous. Auth. of Baltimore City v. Smalls*, 369 Md. 224 (2002); *Brooks*, 411 Md. at 611 n.3 (describing procedural posture of *Gibson*). PHAs in Maryland are specifically included within the definition of "local government" for purposes of the application of the Local Government Tort Claims Act ("LGTCA"), *see* Md. Code Ann., Cts. & Jud. Proc. § 5-301(d)(15), and are exempt from State taxes and assessments. § 12-104(b)(2); *see also* 55 *Opinions of the Attorney General* 391 (1970) (concluding that housing authority is exempt from recordation tax on the same grounds as a "political subdivision," based on the determination that the decision to the contrary in *Pittman v. Housing Authority of Baltimore City*, 180 Md. 457 (1942), had been legislatively overridden by 1945 Md. Laws, ch. 253). While the Court of Appeals has yet to decide whether the operation of a housing project, as opposed to its construction, qualifies as a governmental activity for purposes of immunity under the LGTCA, *see Jackson*, 289 Md. at 120 n.2, "[i]t has been generally held that housing projects are governmental." *Baltimore v. BGE*, 232 Md. at 132.[6]

---

[6] This is not to say that an out-of-state instrumentality, duly organized under the laws of its state, cannot be involved in housing development projects in Maryland. For example, a nonprofit housing corporation formed under the laws of another state and registered to do business here in Maryland may be able to develop and operate low-income housing projects and, if carried out effectively and exclusively for a charitable purpose, may qualify for certain property tax exemptions

(continued. . .)

It is a standard legal principle that a government entity is a creature of statute and has only that authority expressly granted, or reasonably implied, by the governing statute. *See Frederick Cnty. v. Page*, 163 Md. 619, 631 (1932); *Birge v. Town of Easton*, 274 Md. 635, 639 (1975). No Maryland statute authorizes another state's agency, or an instrumentality thereof, to perform governmental functions with respect to public housing in Maryland. Rather, the Maryland Legislature has carefully established a state-wide approach to the public housing pursuant to which DHCD functions as the State's housing finance agency with broad authority pursuant to Division I of the Housing Act, and Maryland counties and municipalities are empowered to create public housing authorities pursuant to Division II of the Housing Act to, among other things, "administer rent subsidy payments and housing assistance programs for both eligible landlords and tenants." § 12-105(a)(2)(i), (b)(1)(i). The statutory scheme is expressly based on the Legislature's "concern" that "many residents of the State are living in substandard housing," § 3-202(a)(3)(i), and the declaration that housing authorities "exercise[] public and essential governmental functions" when addressing that concern. § 12-501(1). This comprehensive approach leaves no room for out-of-state public housing agencies or their instrumentalities to exercise the governmental functions the Maryland Legislature has chosen to entrust to DHCD and Maryland public housing authorities. In sum, Maryland law does not authorize an out-of-state public housing agency or its legal

---

under § 7-202 of the Tax-Property Article. *See Supervisor of Assess. of Baltimore City v. Har Sinai W. Corp.*, 95 Md. App. 631 (1993). A nonprofit housing corporation may also "provide[] safe and sanitary housing to persons of eligible income in such a way that the corporation works essentially *like* an authority," § 12-104(b)(1) (emphasis added), which would entitle the nonprofit housing corporation to a further tax exemption. § 12-104(b)(2)(i). However, nothing in the Housing Act authorizes such nonprofit housing corporations—whether in-state or out-of-state—to administer governmental subsidy programs, as it does with respect to DHCD and PHAs created by Maryland subdivisions. And because DHCD and PHAs in Maryland are government-created, subject to executive oversight, and essentially governmental in nature, the full faith and credit clause of the U.S. Constitution does not come into play. *See*, *e.g.*, *Nevada v. Hall*, 440 U.S. 410, 422-23 (1979) (concluding that "the full faith and credit clause" does not "override the constitutional authority" of the state to legislate on matters "appropriately the concern of the state").

instrumentality to act as a "public housing agency" within Maryland.[7]

### B. Whether DHCD is the Only PHA Authorized to Administer the Section 8 Program Throughout the State

The second question we address—whether DHCD is the only entity that is authorized to serve as the PBCA for the Section 8 program throughout Maryland—is presented by the NOFA. NOFA § E.1. The answer to this question is dictated by statute. Section 12-105 establishes the areas of operation for PHAs in Maryland. The area of operation varies by the level of government which creates the PHA and with the type of activity the PHA is conducting.

A PHA created by Baltimore City or a municipal corporation (hereinafter, a "municipally-created PHA")[8] has the authority to "operate within its territorial boundaries" and, "*without regard to location . . .* administer rent subsidy payments and housing

---

[7] This conclusion necessarily rests on an evaluation of current law, which is unlikely to change prior to the June 11, 2012 deadline for submitting applications in response to the NOFA. Maryland's regularly scheduled 2012 legislative session ended on April 9, 2012, and a special session, devoted to certain budgetary refinements, concluded on May 16, 2012. Although media outlets have widely reported that a second special session will be convened in July, 2012, such a session has not been scheduled and, it is reported, would be focused on expanding slot machine gambling within Maryland. There is no reason to believe that the General Assembly will use a second special session, if held, to take up the criteria for qualifying as a public housing authority in Maryland.

[8] Under Maryland law, Baltimore City is governed by Article XI-A of the Constitution, which is the same constitutional provision that applies to charter counties, rather than Article XI-E, which applies to municipal corporations. *See* 94 *Opinions of the Attorney General* 161, 168 n.13 (2009); *Pressman v. D'Alesandro*, 211 Md. 50, 57 (1956). The Housing Act, however, includes Baltimore City within its provisions relating to both municipal corporations and counties. *Compare* § 12-105(a) (setting forth provisions relating the "authority of a municipal corporation or Baltimore City") *with* § 12-101(g) (defining "county" to mean "a county of the State or Baltimore City"). Given that the Housing Act gives a Baltimore City housing authority the same powers it gives to authorities created by municipal corporations, we consider a PHA created by Baltimore City to be a municipally-created PHA for purposes of this Opinion.

assistance programs," own or manage pre-1990 housing projects, and "develop, own, or operate" a housing project within another political subdivision. § 12-105(a) (emphasis added). This provision enables a municipally-created PHA to perform any function of a PHA within the boundaries of the municipality that creates it, and act throughout the State to, among other things, "administer rent subsidy payments and housing assistance programs." *Id.* (emphasis added). Accordingly, a municipally-created PHA is eligible to serve as the PBCA and administer the Program throughout Maryland.

The same does not hold true for a PHA established by a Maryland county, which may only administer rent subsidy payments and housing assistance programs "[a]nywhere in its county." § 12-105(b)(1). Accordingly, a county-created PHA would be able to administer the Program within the boundaries of the county that created it, but it cannot serve as the PBCA throughout Maryland.[9]

## III

### Conclusion

In our opinion, neither an out-of-state public housing agency nor its legal instrumentality may operate as a public housing agency within Maryland. The administration of public housing programs within Maryland constitutes an essential governmental function that only DHCD and public housing authorities established under Division II of the Housing Act may perform. An out-of-state public housing agency or its instrumentality, regardless of whether the instrumentality was properly formed under the general corporate laws of Maryland or another state, cannot qualify as a public housing authority under Maryland law. With respect to

---

[9] In addition to the general provisions establishing and granting specific powers to local PHAs in §§ 12-101 through 12-705, Division II of the Housing Act provides jurisdiction-specific provisions relating to the PHAs within individual political subdivisions. *See*, *e.g.*, §§ 13-101 to 13-111 (City of Annapolis); §§ 14-101 to 14-103 (Anne Arundel County). In enacting each of these jurisdiction-specific provisions, the Legislature preserved the applicability of the general provisions of Title 12 to the jurisdiction at issue, "except where it is inconsistent with this title." *See*, *e.g.*, §§ 13-102, 14-101, 15-102. None of the jurisdiction-specific provisions is inconsistent with the requirements of § 12-105 relating to the scope of operations of municipal and county PHAs.

in-state entities, only DHCD and municipally-created PHAs are empowered to administer public housing programs on a statewide basis throughout Maryland. A PHA established by a Maryland county may only administer rent subsidy payments and housing assistance programs in its county.

Douglas F. Gansler
*Attorney General*

Anthony J. Mohan
*Assistant Attorney General*

Adam D. Snyder
*Chief Counsel*
  *Opinions and Advice*