744 F.2d 997
 Mario KOCK, Administrator of the Estate of Mercedes Maria
Figaroa Tromp, Deceased, Appellant and Cross-Appellee,
v.
GOVERNMENT OF the VIRGIN ISLANDS, Appellee and Cross-Appellant.
 Nos. 83-3124, 83-3154, 83-3269 and 83-3277.
 United States Court of Appeals,
Third Circuit.
 Argued April 23, 1984.
Decided Sept. 28, 1984.
 
 James E. Beasley (argued), Frederick W. Klepp, Beasley, Hewson, Casey Colleran, Erbstein & Thistle, Philadelphia, Pa., for appellant and cross-appellee.
 Richard H. Hunter (argued), Isherwood, Hunter & Colianni, Christiansted, St. Croix, V.I., for appellee and cross-appellant.
 Before SEITZ, GARTH, and HIGGINBOTHAM, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 I.
 
 1
 Mario Kock, plaintiff, appeals from the district court's order denying his motion to amend the judgment entered against the Government of the Virgin Islands in his wrongful death action. The Government of the Virgin Islands cross-appeals the order of the district court entering judgment.
 
 
 2
 The parties filed their first notices of appeal in this action after the district court announced its judgment from the bench but before the court issued the "separate document" required by Fed.R.Civ. P. 58. These appeals were docketed in this court as No. 83-3124 and No. 83-3154. After the district court issued its order entering judgment, plaintiff filed a motion to amend under Fed.R.Civ. P. 59(c), thereby nullifying the original notices of appeal. Fed.R.App. P. 4(a)(4)(iii). We will therefore dismiss the appeals docketed as No. 83-3124 and No. 83-3154. Within thirty days of the district court's order denying plaintiff's motion to amend, plaintiff filed a second notice of appeal. The Government's notice of cross-appeal followed within fourteen days. These appeals were docketed in this court as No. 83-3269 and No. 83-3277, respectively. We have jurisdiction to decide these appeals under 28 U.S.C. Sec. 1291.
 
 II.
 
 3
 Plaintiff in this action is the administrator of the estate of Mercedes Maria Figaroa Tromp. Ms. Tromp, a resident of Antigua, was visiting the island of St. Croix when she developed a severe headache. Her husband took her to the Charles Harwood Memorial Hospital, one of two hospitals owned and operated by the Government of the Virgin Islands. There she was examined by a Government-employed doctor[1] who prescribed some medication and instructed that she be taken home. Ms. Tromp died several hours later of a cerebral hemorrhage. The parties do not dispute in this appeal that her death was the result of the doctor's negligence.
 
 
 4
 Plaintiff filed this action against the Government of the Virgin Islands in the district court in 1979. In 1982 the court ruled that plaintiff's right to recover, if proved, would not be subject to 33 V.I.C. Sec. 3411(c) (Equity Supp.1983), which limits damages against the Government to $25,000 for the wrongs of its employees. Instead, the court ruled that the Government would be liable for damages up to the amount of medical malpractice insurance it had purchased pursuant to the medical malpractice statute in the Virgin Islands. In this case the Government's insurance coverage was $100,000, the minimum coverage required under the statute.
 
 
 5
 In 1983, after a one-day trial, the district court ruled that the Government was liable for the death of Ms. Tromp and must pay $100,000 in damages. Plaintiff moved to amend the judgment to include damages in excess of $100,000, and this motion was denied. Plaintiff appeals from the order denying his motion, and the Government appeals from the judgment to the extent it awards damages in excess of $25,000.
 
 III.
 
 6
 The issue in both the appeal and the cross-appeal is the amount of damages recoverable against the Government of the Virgin Islands in an action for wrongful death based on medical malpractice. The Government's primary contention is that plaintiff's recovery is limited by the language of the Tort Claims Act, which states that "[n]o judgment shall be awarded against the Government of the Virgin Islands in excess of $25,000." 33 V.I.C. Sec. 3411(c). Plaintiff responds that the Virgin Islands Health Care Providers Malpractice Act, 27 V.I.C. Sec. 166e(b) (Equity Supp.1983) ("the Medical Malpractice Act") expands this waiver of liability beyond $25,000.
 
 
 7
 Plaintiff contends first that the amount of his recovery against the Government is limited only by 27 V.I.C. Sec. 166b, which states that "[t]he total amount recoverable for any injury of a patient may not exceed two hundred and fifty thousand dollars ...." We read this language as imposing an ultimate limit of $250,000 on medical malpractice recoveries. We are convinced, however, that the language does not foreclose the possibility that lower limits may apply in actions against particular defendants. We are therefore free to look elsewhere in the Medical Malpractice Act or other legislation to determine what limits, if any, apply in malpractice actions against the Government.[2]
 
 
 8
 In the alternative, plaintiff contends that he may recover against the Government to the extent that the Medical Malpractice Act requires the Government to purchase malpractice insurance. The Act states that the Virgin Islands Commissioner of Health is "authorized and directed" to purchase a malpractice liability insurance policy for all "health care providers" required to be licensed in the Virgin Islands. 27 V.I.C. Secs. 166e(a), 166(c). "Health care providers" include, inter alia, physicians, nurses, "para-medical personnel," and public and private hospitals. Id. Sec. 166(c), (d). The insurance policy must provide minimum coverage of $100,000 for each injured patient. Id. Sec. 166e(b). The Government pays the premiums for this insurance for providers "exclusively employed by the Government of the Virgin Islands on a full-time basis ..." id. Sec. 166e(a)(1).
 
 
 9
 We agree with plaintiff that the Virgin Islands legislature, by enacting this statute, intended to expand the waiver of governmental immunity set forth in section 3411(c) of the Tort Claims Act. We can think of no other reasonable explanation for the legislature's inclusion of "public hospitals" within the definition of "health care providers" required to have insurance protection. If "public hospitals" may never be liable for $100,000 in damages, the insurance requirement is meaningless. We are not free to ignore the requirement, or to construe it in such a way as to give it no meaningful effect.
 
 
 10
 The Government points out, however, that plaintiff has not sued a public hospital; instead, he has sued the Government, which is not defined as a "health care provider" under the Medical Malpractice Act. Any argument based on the insurance requirement is therefore irrelevant, according to the Government, and recovery must be limited to $25,000 under the Tort Claims Act. We disagree, because we do not believe that the legislature, in drafting the Act, intended to draw a distinction between the "Government" and "public hospitals". As the Government concedes, the two public hospitals in the Virgin Islands are mere instrumentalities of the Government operated by the Department of Health.[3] The mandatory malpractice insurance for the hospital is, in effect, insurance protection for the Government when it is doing business as a health care provider.[4]
 
 
 11
 Other considerations do not require us to treat the Government and its public hospitals as distinct entities. We do not deprive the Government of any defenses it would have if it were sued in the guise of the hospital.[5] Neither does our decision increase the Government's ultimate exposure to liability under the Act, since plaintiff's recovery will be from Government-purchased insurance in any event.
 
 
 12
 The Government refers us to the rule of statutory construction that "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." Soriano v. United States, 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957). We decline to apply this rule in the present case, however. Instead we look to section 2(b) of the Revised Organic Act of 1954, 48 U.S.C. Sec. 1541(b), for the proper rule of statutory construction. That section states that "no tort action shall be brought against the government of the Virgin Islands ... without the consent of the legislature ...." The statute by its terms does not require express consent.[6] In the present case, we find sufficient indications of legislative consent in the mandatory insurance provisions for public hospitals discussed above. Cf. Silverlight v. Huggins, 488 F.2d 107, 110 (3d Cir.1973) (construing Tort Claims Act to apply retroactively).
 
 
 13
 We recognize that when a court infers legislative consent to be sued, it must proceed cautiously and with due respect for the government's sovereignty. The Maryland Court of Appeals, in a case similar to our own, has required a "necessary and compelling implication" by the legislature that immunity has been waived. Jackson v. Housing Opportunities Commission, 289 Md. 118, 422 A.2d 376, 378 (1980). Applying that test to the case before us, we find the inference of an expanded waiver to be "necessary and compelling" because, as stated above, we would otherwise be required to conclude that the Virgin Islands legislature had included meaningless language in the Medical Malpractice Act.
 
 
 14
 The legislative history of the Medical Malpractice Act, when considered in its entirety, is consistent with our holding that the Virgin Islands legislature, in enacting the Malpractice Act, consented to expand the Government's liability for the medical malpractice of its employees. Admittedly, some remarks during the debate suggest that the bill's sponsor considered employees of a Government hospital to be covered by the damages limitation of the Tort Claims Act. Leg. Debate on Bill 6773, 11th Leg. Sess. of V.I., Oct. 29, 1974, at 11. The debate also establishes, however, the legislature's concern to protect certain low-level nonmedical employees from liability for hospital-related injuries. Id. at 10-13. The bill as enacted does not provide individual coverage for these workers. Instead it gives them protection through the insurance policy covering their employer. Were we to limit recovery against the Government, we would rob these workers of the protection they were intended to have.
 
 
 15
 We are aware that many state courts have refused to find a waiver of governmental immunity based on a government's purchase of liability insurance. See generally 68 A.L.R.2d 1437 (1959 & 1984). None of these courts, however, has confronted a situation similar to our own, in which there is an express general waiver of immunity coupled with a statutory mandate to purchase a particular type of liability insurance. The two cases we have found that do address this situation have held that there is a waiver. In Jackson v. Housing Opportunities Commission, supra, the Maryland Court of Appeals held that the state legislature, in enacting a statute requiring a county housing commission to purchase liability insurance, intended to waive immunity from tort liability to the extent of the insurance actually purchased.[7] 422 A.2d at 380-82. In Longpre v. Joint School District No. 2, 151 Mont. 345, 443 P.2d 1 (1968), the Supreme Court of Montana held that a state statute requiring school districts to carry minimum amounts of liability insurance for their school buses was an implicit waiver of immunity to the extent of the insurance.
 
 
 16
 Finally, the Government contends that our holding is inconsistent with the decision of this court in Richards v. Government of the Virgin Islands, 579 F.2d 830 (3d Cir.1978). There we held that a plaintiff's overall recovery against the Government of the Virgin Islands in a wrongful death action, including damages, costs, and attorney's fees, may not exceed the $25,000 limit of the Tort Claims Act. The Government's argument apparently is based on section 166b of the Medical Malpractice Act, which states that "recovery in an action for wrongful death of a patient shall be as provided in [the wrongful death statute, 5 V.I.C. Sec. 76 (Equity Supp.1983) ]." 27 V.I.C. Sec. 166b. Since the $25,000 limit in the Tort Claims Act applies to actions under the wrongful death statute, see Richards, supra, and since recovery for wrongful death under the Medical Malpractice Act is governed by the wrongful death statute, see Sec. 166b, then the $25,000 limit must apply to wrongful death recoveries under the Medical Malpractice Act.
 
 
 17
 This argument rests on an erroneous premise. In Richards, we limited recovery against the Government, but we did not do so by construing the Virgin Islands wrongful death statute. Indeed, we could not have done so, because the wrongful death statute contains no limitation on the amount of recovery. If the wrongful death statute contains no such limitation, then it follows that the reference to that statute in section 166b of the Medical Malpractice Act cannot impose any limitation on the amount of recovery in malpractice actions against the Government.
 
 
 18
 Our holding in Richards was based on the Tort Claims Act. We simply held that the limitation on the amount of recovery against the Government must include any award of costs or attorneys' fees. We did not consider the effect of the Medical Malpractice Act on the recovery, because the death in that case was not the result of medical malpractice. In contrast, our decision today is based entirely on the legislature's intent, in enacting the Medical Malpractice Act, to amend the Tort Claims Act and raise the limit on recoveries in malpractice actions from $25,000 to $100,000. We do not disturb the rule in Richards that costs and fees must be included within this amount.
 
 
 19
 We also note the unusual result were we to accept the Government's argument. Malpractice plaintiffs suing the Government for injuries would be able to recover up to $100,000, while malpractice plaintiffs suing for wrongful death would only be able to recover $25,000. We find it unlikely that the legislature intended such a result.
 
 
 20
 In conclusion, we hold that the mandatory malpractice insurance provision of the Medical Malpractice Act expands the Government's waiver of immunity under the Tort Claims Act from $25,000 to $100,000 for medical malpractice actions, including actions for wrongful death based on malpractice. The Government policy applicable to the present litigation was only for the minimum $100,000. Thus we need not, and do not, decide whether the Government's purchase of additional malpractice insurance beyond the $100,000 would further expand the Government's liability. Neither do we intimate any opinion about the proper result if the Government failed to obtain the minimum insurance, in violation of the provisions of the Act.
 
 V.
 
 21
 The order of the district court will be affirmed. The parties will bear their own costs.
 
 GARTH, Circuit Judge, dissenting:
 
 22
 The majority opinion of this court holds that the Health Care Providers Malpractice Act, ("HCPMA"), 27 V.I.C. Sec. 166 (Equity Supp.1983), has impliedly repealed the Virgin Islands Torts Claims Act, 33 V.I.C. Sec. 3411 (Equity Supp.1983) ("VITCA"), so that a plaintiff can now recover in a wrongful death action against the government any amount in excess of $25,000 for which the Commissioner has insured the hospital--in this case $100,000. The majority has so held despite the fact that wrongful death actions are explicitly excepted from the Medical Malpractice Act by section 166(b) of the Act, and despite the fact that Richards v. The Government of the Virgin Islands, 579 F.2d 830 (3d Cir.1978), has limited wrongful death actions against the Virgin Islands government to $25,000.
 
 
 23
 I cannot agree with this result nor with the reasoning which leads to it. I dissent.
 
 I.
 
 24
 Under its organic act, the Virgin Islands enjoys complete sovereign immunity. 48 U.S.C. Sec. 1541 provides that "no tort action shall be brought against the government of the Virgin Islands or against any officer or employee thereof in his official capacity without the consent of the legislature." Thus, by express mandate of Congress, the Government of the Virgin Islands enjoys complete sovereign immunity, and such immunity may be waived only by the legislature. Indeed, insofar as tort actions against the government are concerned, the legislature has waived immunity but only to the extent of $25,000. 33 V.I.C. Sec. 3411.
 
 
 25
 In approaching the question of waiver of sovereign immunity, both the Supreme Court and this court have made clear that such a waiver will not lightly be inferred. In Soriano v. United States, 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957), the Supreme Court declined to toll the statute of limitations for the duration of hostilities in a suit against the United States, stating that: "This Court has long decided that limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." Id. at 276, 77 S.Ct. at 273. Similarly, this court has declined to read an earlier version of the Virgin Islands organic act to allow tort suits against the Government of the Virgin Islands based on "non-governmental" acts absent explicit language authorizing such suits. Harris v. Municipality of St. Thomas & St. John, 212 F.2d 323 (3d Cir.1954). According to this court in Harris, the two municipalities of the Virgin Islands "having 'many of the attributes of quasi sovereignty possessed by the states' ... could not be sued except to the extent that each consented to be sued, by appropriate legislation of its respective legislative body." Id. at 327, quoting Porto Rico v. Shell Co., 302 U.S. 253, 262, 58 S.Ct. 167, 171, 82 L.Ed. 235 (1937). These cases demonstrate that a waiver of sovereign immunity will not be implied, that an express waiver of sovereign immunity will be strictly construed and narrowly read, and that only the legislature, not the executive, may waive sovereign immunity.II.
 
 
 26
 If the Government of the Virgin Islands is to be held liable at all in this case, then, some act of the legislature must satisfy this strict test for waiver of sovereign immunity. The majority relies on certain provisions of the HCPMA as constituting such an implied waiver. To place the majority's result in context, however, three pertinent Virgin Islands statutes must be considered: VITCA, the HCPMA, and, since this case involves malpractice resulting in death, the Virgin Islands Wrongful Death Act, 5 V.I.C. Sec. 76 (Equity Supp.1983). Examination of these statutes reveals not only that the HCPMA evidences no plausible intent to waive sovereign immunity, but that the interrelation of these three statutes presents a scheme that is entirely inconsistent with any legislative intent to waive sovereign immunity in malpractice actions to an extent greater than that provided by VITCA.[1]
 
 A.
 
 27
 VITCA represents the Government of the Virgin Islands' express, limited waiver of sovereign immunity. Duly enacted by the legislature of the Virgin Islands, VITCA constitutes the "consent of the legislature" required by 48 U.S.C. Sec. 1541(b) before the Government of the Virgin Islands may be sued. Besides waiving sovereign immunity "with respect to injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of an employee of the Government of the Virgin Islands." 33 V.I.C. Sec. 3408, VITCA also provides: "No judgment shall be awarded against the Government of the Virgin Islands in excess of $25,000." 33 V.I.C. Sec. 3411. The statutory language is emphatic: no judgment shall exceed $25,000. Yet the majority today permits a judgment of $100,000 against the Government of the Virgin Islands even though no intervening Act of the legislature has repealed or amended this limitation of recovery in VITCA.
 
 B.
 
 28
 The majority opinion relies on certain provisions of the HCPMA as both repealing the express limitation of VITCA and constituting the legislative consent necessary under 48 U.S.C. Sec. 1541(b). HCPMA enacted a comprehensive scheme for the regulation of health care providers and the compensation of malpractice victims. The Act creates procedures for agency review of malpractice claims and reference to professional boards for disciplinary action. 27 V.I.C. Secs. 166g, 166i, 166j. The Act limits recovery for a malpractice claim to $250,000 except in the case of malpractice resulting in death, in which case the unlimited recovery of the Wrongful Death Act applies, 27 V.I.C. Sec. 166b--unlimited, that is, except in the case of the government, against which recovery cannot exceed $25,000. See Richards v. Government of the Virgin Islands, 579 F.2d 830 (3d Cir.1978). The Act also authorizes the Commissioner of Health to procure a group insurance policy to cover all "health care providers," as defined in the Act. 27 V.I.C. Sec. 166e. The cost of this insurance is to be paid by the Government, for which it is reimbursed in full by health care providers in private practice, and reimbursed in part by part time government employees. Under section 166e, the policy procured by the Commissioner must provide coverage for at least $100,000 per patient per occurrence.C.
 
 
 29
 Also implicated in this case, and explicitly made applicable by section 166b of HCPMA,[2] is the Wrongful Death Act, 5 V.I.C. Sec. 76. This Act provides a cause of action for wrongful death. The Act does not provide for any limitation on the amount recoverable. In Richards, supra, a case involving the shooting death of a citizen by a government employee, this court held that the Wrongful Death Act did not extend the waiver of sovereign immunity under VITCA, and that wrongful death actions against the government are limited in recovery to the $25,000 amount specified by VITCA.
 
 III.
 
 30
 Nevertheless, the majority construes the HCPMA to create two classes of Wrongful Death claimants against the Government of the Virgin Islands; those suing under a claim of medical malpractice and those suing under all other claims. Thus, according to the majority, if a policeman intentionally (let alone negligently) fires his weapon and kills someone, the $25,000 limit applies (Richards ), but if a surgeon negligently slips with his scalpel, government liability is limited only by the insurance coverage prescribed by the Commissioner of Health--here, $100,000, but presumably this coverage could be provided up to $250,000. Such a distinction is not only illogical, but it finds no support in the statutes or the case law.
 
 
 31
 Yet, the majority so construes the HCPMA without any indication that the legislature which enacted the HCPMA so intended to extend the Government's liability[3] and despite this same majority's protestation this same day that "[w]e decline to create two classes of wrongful death plaintiffs--those suing for wrongful death resulting from malpractice, and those suing for wrongful death resulting from other torts." Richardson v. Knud Hansen Memorial Hospital, 744 F.2d 1007 (3d Cir. 1984) (maj. op. at 1012).
 
 
 32
 According to the majority's holding today, a medical malpractice claimant can recover from the government up to the amount of insurance which the Commissioner has obtained for the hospital. In the present case the recovery can reach $100,000. While the majority declines to decide it, I assume that if the Commissioner increases the amount of insurance for the Charles Harwood Hospital to $250,000 next year, a recovery of up to $250,000 could be had. I also assume that if for some reason the Commissioner insured the Charles Harwood hospital for $150,000 and the Knud Hansen Hospital for $200,000, a patient's recovery against the government would vary according to the institution in which he was hospitalized despite the fact that they are both Government hospitals. (Indeed they are the only two hospitals in the Virgin Islands.) Yet the Virgin Islands legislature has nowhere consented to such arbitrary waivers of sovereign immunity.
 
 
 33
 In each instance the amount of recovery would exceed $25,000 even though nowhere is there to be found an exception to the $25,000 limitation specified in VITCA. Moreover, and most significantly, the authority for these recoveries against the government in excess of $25,000 originates not from the legislature which has the function of waiving sovereign immunity, if it is to be waived. Rather the authority for these excess recoveries results from the Health Commissioner's unilateral act by which, under the majority's holding, sovereign immunity of the Virgin Islands may be waived.IV.
 
 
 34
 The majority bases its finding of waiver of sovereign immunity on two provisions of the HCPMA. The first is the definitional section, which defines "Health care provider" as "including a ... hospital," and defines "Hospital" as "a public or private institution licensed under 19 Virgin Islands Code, Chapter 15." 27 V.I.C. Sec. 166(c), (d). The second is the HCPMA's insurance provision which "authorize[s] and direct[s] [The Commissioner of Health] to procure a group insurance policy which shall cover the cost of Professional Liability Insurance on an occurrence basis for health care providers as defined in section 166(c) of this subchapter." 27 V.I.C. Sec. 166e(a).
 
 
 35
 These two provisions are the only bases, and indeed constitute the only language, the majority can find in the HCPMA to demonstrate a waiver of sovereign immunity. Yet, contrary to the majority's assertion that any other reading would render the inclusion of the term "public institutions" within the statute as superfluous, its inclusion is entirely consistent to achieve the other purposes assigned to the medical malpractice review board. As I have pointed out, the HCPMA includes all aspects of review of medical practices and is not confined to just providing insurance coverage for claims. Moreover, the definitional language, "public or private institution," was borrowed from the Indiana statute upon which the HCPMA is based, Ind.Code Sec. 16-9.5-1-1(a). Indiana, however, had previously abrogated sovereign immunity in this sort of action. See Seymour National Bank v. State, 179 Ind.App. 295, 384 N.E.2d 1177 (1979) (in banc) rev'd on other grounds, 422 N.E.2d 1223 (Ind.1981), modified 428 N.E.2d 203 (Ind.1981).
 
 
 36
 The borrowing of language from a statute which did not itself abrogate sovereign immunity, cannot evidence legislative intent to abrogate sovereign immunity in the new statute. The most that can be said is that the Virgin Islands legislature inadvertently included the term "public institution" as a health care provider without realizing that under VITCA no claim could exceed $25,000 because both hospitals were government owned instrumentalities. The fact that the Health Commissioner thereupon insured the hospitals for more than $25,000 indicates no more than that the legislation was inartfully drawn and inartfully implemented.
 
 
 37
 That the Virgin Islands Legislature did not recognize that the HCPMA, if read literally, would include immune (i.e., government) public hospitals in the insurance scheme is reflected both in the fact that the definition also includes "private institutions" even though there are no private hospitals in the Virgin Islands, and in the fact that the insurance provision itself sets out a reimbursement scheme which has no reference to a hospital as an individual entity. Section 166e refers only to full time government employees, part time government employees, and private practitioners. It does not contemplate, by its terms, insurance coverage for the hospitals themselves.[4]V.
 
 
 38
 The majority relies on two cases, Jackson v. Housing Opportunities Commissioner, 289 Md. 118, 422 A.2d 376 (1980) and Longpre v. Joint School District No. 2, 151 Mont. 345, 443 P.2d 1 (1968) claiming that they support the proposition that a statutory authorization of liability insurance evidences legislative intent to waive sovereign immunity.
 
 
 39
 Both Jackson and Longpre, however, involved insurance coverage for governmental entities subject to suit in their own right. Jackson explicitly relied on the legislative direction that the Housing Opportunities Commission there involved was expressly authorized "to sue and be sued." 422 A.2d at 379. The Jackson court was concerned with whether the legislature had granted the governmental entity, in that case the Commissioner, the capacity to be sued and whether, given that capacity, the legislature had consented to permit suit against the Commission. It concluded that both requirements had been met and therefore held that a waiver of sovereign immunity had been effected. In the present case, the entity to be insured pursuant to the HCPMA--the hospital--is not itself subject to suit other than by an action against the Government. See maj. op. 999 - 1000 & n. 3.
 
 
 40
 Thus, at the very threshold, neither Jackson nor Longpre can be regarded as authoritative support for the majority's thesis that the mere provision for liability insurance constitutes a waiver of sovereign immunity. It is evident that the Virgin Islands legislature has never given authority to either the Charles Harwood Hospital or the Knud Hansen Hospital to be sued and it was that capacity "to be sued" that was the fact in Longpre and was the linchpin of the Jackson decision.
 
 
 41
 Even were the Jackson and Longpre cases on point, they would not be dispositive, as they represent a minority rule. See, e.g., Seymour National Bank v. State, 428 N.E.2d 203 (Ind.1981); Zapf v. Board of Chosen Freeholders, 87 N.J.Super. 426, 209 A.2d 660 (App.Div.1965); Annot., 68 A.L.R.2d 1437 (1959 & 1984). At the very least, the question whether procurement of insurance waives sovereign immunity is an open one in the Virgin Islands. Given the congressional mandate that only the legislature may waive sovereign immunity, the prior existence of VITCA, which constitutes an explicitly limited waiver of sovereign immunity, and the fact that the hospital insured cannot itself be sued, I am not persuaded that the minority rule, implying waiver by insurance coverage, is the preferred rule to be followed by the Virgin Islands.
 
 
 42
 In light of the rule that waivers of sovereign immunity are to be given a strict interpretation, I cannot conclude that the HCPMA has expanded the limited waiver of sovereign immunity provided for in VITCA. I believe the only sound construction of the statutes involved must be that all claimants against the Government of the Virgin Islands are limited to a recovery of $25,000, whether the claim is based on medical malpractice not resulting in death, malpractice resulting in death, or, indeed, any other claim.
 
 
 43
 To hold that VITCA has been extended as the majority has extended it, by virtue of two isolated provisions found in the HCPMA, is to distort the entire concept of sovereign immunity. The majority opinion's tenuous construction of an insurance provision which it holds is sufficient to waive sovereign immunity, despite the Congressional directive that only the legislature may waive immunity, is, in my view, simply incorrect. I therefore dissent.
 
 
 
 [1]
 The district court referred to the doctor as "Dr. Maximo Leado". Plaintiff refers to him as "Dr. Llido". The Government refers to him as "Dr. Malcolm Leado". We will refer to him simply as "the doctor"
 
 
 [2]
 In view of our holding, we need not decide the more basic question of whether the $250,000 limit in 27 V.I.C. Sec. 166b applies to wrongful death actions at all. Section 166b states that the Virgin Islands' wrongful death statute, 5 V.I.C. Sec. 76, controls recovery in such actions. The wrongful death statute itself does not impose a ceiling on damages
 
 
 [3]
 In a separate appeal decided today raising some of the same issues as this appeal, the Government of the Virgin Islands volunteered the following description of the Knud Hansen Memorial Hospital, the other hospital owned and operated by the Government of the Virgin Islands:
 Although in a generic and pragmatic sense the Knud Hansen Memorial Hospital may properly be viewed as an institution, no statutory provision of the Virgin Islands Code bestows upon it a legal existence of its own. At all times material to this litigation the Knud Hansen Memorial Hospital was an arm of the executive branch of government administered under the Department of Health of the Government of the Virgin Islands and subject to the licensing provisions of 19 V.I.C. Sec. 221 et seq.
 Brief for Appellant at 16-17, Richardson v. Knud Hansen Memorial Hospital, 744 F.2d 1007, slip op. (1984).
 
 
 [4]
 No one has challenged the district court's finding in this action that "the policy of insurance taken out by the government lists the named insured as Government of the Virgin Islands of the United States and participating health care providers." Kock v. Government of the Virgin Islands, No. 79-138 (D.V.I. March 19, 1982) (order determining amount of recoverable damages)
 
 
 [5]
 The Act states that the Government will only be liable for the tortious conduct of its employees "under circumstances where the Government ..., if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 33 V.I.C. Sec. 3408. Under the Act the Government may also defend on the grounds that the party injuring the plaintiff was an independent contractor, not an employee of the Government. Id. Sec. 3401 (Equity 1967)
 
 
 [6]
 The legislative history of the 1954 Act sheds no light on this issue
 
 
 [7]
 The court stated that its analysis was applicable to state agencies as well as county agencies. 422 A.2d at 377
 
 
 [1]
 The majority opinion avoids attempting to reconcile these statutes by leaving unanswered the following questions: Does the $250,000 limit prescribed by HCPMA apply to wrongful death actions brought under 5 V.I.C. Sec. 76? See maj. op. p. 999 n. 2. What effect would obtain in the event of differing levels of insurance coverage at the two government hospitals, or insurance coverage at any government hospital less than the HCPMA $100,000 minimum? See maj. op. at p. 1002
 Holding any recovery to the limits of VITCA resolves all such questions and reconciles all three statutes. Moreover, and contrary to the majority's view, limiting a recovery against the hospital (the Government) to $25,000 would not impair the coverage for government employees who obviously were the intended beneficiaries of the insurance program.
 
 
 [2]
 27 V.I.C. Sec. 166b provides that "The recovery in an action for wrongful death of a patient shall be as provided in 5 Virgin Islands Code Sec. 76."
 
 
 [3]
 We were provided by counsel with the legislative history of the Health Care Providers Malpractice Act. 27 V.I.C. Sec. 166 (Equity Supp.1983). Neither counsel nor our own examination has revealed any discussion relevant to the issue which confronts us; i.e., whether the Virgin Islands Torts Claims Act, 33 V.I.C. Sec. 3405 (Equity Supp.1983) was repealed or superseded by the HCPMA
 
 
 [4]
 Section 166e provides:
 (a) The Commissioner of Health is hereby authorized and directed to procure a group insurance policy which shall cover the cost of Professional Liability Insurance on an occurrence basis for health care providers as defined in section 166(c) of this subchapter. Health care providers who engage in private practice and who participate in the group insurance policy procured by the Commissioner of Health shall reimburse the Government for their premiums, which reimbursement shall be deposited in the General Fund of the Treasury of the Virgin Islands. The Government of the Virgin Islands shall provide financial assistance toward the payment of premiums for health care providers who are employed by government agencies to perform or furnish health care on the following basis:
 (1) For said health care providers exclusively employed by the Government of the Virgin Islands on a full-time basis, the entire premium shall be borne by the Government of the Virgin Islands.
 (2) For said health care providers who, in addition to their employment with the Government of the Virgin Islands, engage on their own time in a private practice, one-half of the premium shall be paid for by said provider and one-half by the Government of the Virgin Islands.
 
 
 [27]
 V.I.C. Sec. 166e(a) (Equity Supp.1983)