**FELIX ROSA, Plaintiff,**
**v.**
**V.I. HOUSING AUTHORITY, Defendant**

Civil No. 584/1999

Territorial Court of the Virgin Islands

Division of St. Croix

April 17, 2001

LEE. J. ROHN, ESQ., *for Plaintiff.*

LAD MINGUS, ESQ., Law Offices of R. Eric Moore, *for Defendant*

ROSS, *Judge*

## MEMORANDUM

### (April 17, 2001)

THIS MATTER is before the Court on Plaintiff's Motion for Reconsideration of its December 13, 2000 Order, or, in the Alternative, to Certify the Order for Interlocutory Appeal. After careful consideration and for the reasons stated herein, the Court denies Plaintiff's motions and affirms its prior decision holding that judgment against the Virgin Islands Housing Authority ("VIHA") is statutorily limited to a total of $50,000.00, inclusive of all costs and fees by virtue of Title 29, V.I.C. § 87.[1]

## FACTS

Plaintiff brought this action against VIHA for personal injury damages suffered as a result of falling off a ramp in the Aureo Diaz Housing Project. Plaintiff alleges that his "physical injuries were sustained as a

---

[1] Amendment adding § 87, Title 29, Slum Clearance Legislation passed on May 2, 1994 by Act 5970, Section 4.

direct and proximate result of VIHA's negligent acts and omissions." Defendant moved for partial summary judgment requesting "an order precluding any claims or judgment against VIHA in excess of $50,000.00 on the basis that the Legislature, in Title 29 V.I.C. § 87, has statutorily exempted VIHA from any judgment or claims above $50,000.00." In opposition, Plaintiff argued that he should be able to recover up to the limits of VIHA's insurance policy based upon sound public policy and because the Legislature had expanded VIHA's waiver of sovereign immunity by explicitly giving VIHA the power "to sue and be sued," and the power and authority "to purchase insurance."[2] On December 13, 2000, this Court entered its order stating that, "pursuant to Title 29 V.I.C. § 87, Plaintiff may make no claim nor receive any judgment in excess of $50,000.00 inclusive of all costs and fees." Notwithstanding the court's decision, Plaintiff insists that Plaintiff can recover for damages up to the insurance limit of $500,000.00, because VIHA's insurance policy included an endorsement waiving the defense of sovereign immunity, despite the $50,000.00 legislative cap. (Motion to Reconsider at 1.)

## DISCUSSION

### 1. Motion for Reconsideration

The critical issue now before the court is whether VIHA, by purchasing an insurance policy with a limit of $500,000.00, waived its express statutory right to immunity from liability exceeding $50,000.00 for injury resulting from its negligence.

 Under the Revised Organic Act, the Virgin Islands enjoys complete sovereign immunity. See § 2b of the Revised Organic Act of 1954, 48 U.S.C. § 1541. It provides that "no tort action shall be brought against the government of the Virgin Islands or against any officer or employee thereof in his official capacity without the consent of the legislature." Thus, by express mandate of Congress, the Government of the Virgin Islands enjoys complete sovereign immunity, and such immunity may be waived only by the legislature. Indeed, the legislature

---

[2] Section 35 enumerating all the powers and duties of VIHA, including subsection 2, the power to sue and be sued and subsection 18, the power to purchase insurance, was added to Title 29, Slum Clearance Legislation by the 1962 Act, *32 years before* the $50,000.00 statutory cap at issue herein was passed by the Legislature.

has expressly waived immunity in tort actions against the government, but only to the extent of $25,000, including damages, costs and attorney's fees. 33 V.I.C. § 3411. *See Richards v. Government of the Virgin Islands,* 579 F.2d 830 (3d Cir.1978) (wherein the court held a plaintiff's overall recovery against the Government of the Virgin Islands in a wrongful death action, may not exceed the $25,000 limit of the Tort Claims Act, including damages, costs, and attorney's fees).

The United States Court of Appeals for the Third Circuit and the U.S. District Court of the Virgin Islands have held that it is within the power of the Legislature of the Virgin Islands to constitutionally enact statutory limitations or "caps" on recoveries in certain civil lawsuits. *See Davis v. Omitowoju,* 883 F.2d 1155, 1159 (3d cir. 1989); *Bell v. Dr. Grzeck and Dr. Bricker,* Civil No. 90-69 (D.C.V.I. Order dated April 15, 1994 and Affirmed by Memorandum Opinion dated December 11, 1996). In *Bell,* as Plaintiff carefully points out in his motion to reconsider, the decision focuses specifically on the legislative intent behind the statute in question. The District Court limited Plaintiff's recovery to the $250,000.00 statutory cap despite the fact that one of the health care provider's private insurance covered up to $3,000,000.00. The decision to uphold the statutory cap was premised on the legislative purpose behind the Medical Malpractice Act in containing health care costs in the territory: "the public interest ... requires that the insurance premium levels, for health care professional must be retained in order to maintain high quality medical services for the Virgin Islands," *Id.* at 34 (*quoting Davis,* 883 F.2d at 1159, *quoting* 1986 V.I. Sess. Laws 170).

While affirming the principle that the legislature has the power to waive sovereign immunity, the decision in *Kock v. Government of the Virgin Islands,* 744 F.2d 997, 1001 (3d Cir. 1984) held that a legislatively mandated insurance requirement expanded the Government's waiver of immunity from the statutory cap of $25,000.00 to $100,000.00 in medical malpractice actions. Again, the Court's main focus was the legislative intent behind the statute in question. The Court found that the legislature's implicit intent in decisively mandating insurance coverage was to increase the Government's liability up to the minimum $100,000.00 required coverage. *Id.* at 1002. Therefore, in approaching the sovereign immunity waiver issue herein, we must carefully look at the language and legislative intent behind the

$50,000.00 statutory cap in Title 29, Section 87 and VIHA's reasons for procuring an insurance policy covering up to $500,000.00.

In construing the clear language and legislative intent behind § 87, Title 29, we must preliminarily address the impetus and legislative development of the Slum Clearance and Housing Development Act ("Housing Act") of which Section 87 is a part. Section 1 of the Act provides in pertinent part:

"The Declaration of Housing Policy contained in the Housing Act of 1949 (Public Law 171, 81st Cong. 1st Sess.), as amended, and its goals of providing a decent home and suitable living environment for every American family expresses the sense of this Legislature and its concern with the public welfare and the economic health of our nation and of the Virgin Islands." Subsection (i) provides further: "The Virgin Islands joins in the national policy to promote the health safety and welfare of its people by the elimination of slum and blight conditions, by the orderly redevelopment and renewal of communities, by proper planning of community development and by provision for safe, decent and sanitary dwellings for low-income families, through all available Federal and local governmental programs and through encouragement of private enterprise to participate in the common task of community improvement."

■ Enactment of the Housing Act in the Virgin Islands in 1950 repealed prior local laws on the subject of slum clearance and low-cost housing. Eventually, the "Virgin Islands Housing and Urban Renewal Authority," the public body corporate and politic created in 1950 to carry out the goals as set forth initially in the Housing Act was subsequently renamed "The Virgin Islands Housing Authority" by amendment in 1962. (Act June 18, 1962, No. 903 § 5b.) Sections 31 through 38 were also amended by the 1962 Act. Section 31 specifically provides, "... it (VIHA) shall constitute a 'public housing agency' within the meaning of the United States Housing Act of 1937, as amended and a 'local public agency' within the meaning of Title I of the Housing Act of 1949, as amended. The Authority (VIHA) shall have all the powers, rights, duties, privileges, functions, obligations, and status as a 'public body corporate and politic,' prescribed or provided by this chapter." Section 35, expands further on this by specifically enumerating all the powers and duties, including the power to sue and be sued, subsection 2; and the power to purchase insurance, subsection 18. Consequently, by creating VIHA as a

135

public body corporate and politic, and decisively conferring it with the power to sue and be sued, the government was clearly and unequivocally waiving sovereign immunity with respect to VIHA in its capacity as a "separate entity" from the government. *See Greaux v. Government,* 14 V.I. 160 (Terr. Ct. 1977). (Wherein the court held that "the Virgin Islands Housing Authority resulted in the establishment of a separate and distinct legal entity, one liable on its debts and responsible for its torts, to the exclusion of any liability on the part of the Government. Its amenability to suit for personal injuries operates to relieve the Government of any potential liability it may have incurred otherwise. This reasoning is strongly buttressed by the Supreme Court decision in *Federal Housing Administration v. Burr,* 309 U.S. 242, 84 L. Ed. 724, 60 S. Ct. 488 (1940)")

In 1994, however, the Housing Act was amended and Section 87 was added, thereby re-instituting VIHA's inherent right to sovereign immunity as a government created entity and quantifying it by limiting recovery. (Amendment effective May 2, 1994 by Act 5970, Section 4) Presently, Section 87(a), specifically limits the amount of recovery against VIHA to $50,000.00 "for injury or loss of property, or personal injury or death" for claims caused by negligent conduct of "employees acting within the scope of employment" or "in connection with the operation of the use of the V.I. Housing Authority facilities." The statute, however, also explicitly excludes any injury or loss of property, or personal injury or death claim caused by the gross negligence of VIHA. Thus, by a decisive legislative act, VIHA may only be statutorily immune from judgments exceeding $50,000.00 where injury or loss is caused by the negligence of an employee acting within the scope of employment or caused in connection with the operation or the use of the V.I. Housing Authority facilities. Here, Plaintiff is suing VIHA for personal injury damages arising from VIHA's alleged negligence in connection with the Aureo Diaz Housing Project, thus the legislative "cap" imposed to protect VIHA from negligence claims of this nature, obviously applies to limit Plaintiff's recovery in this case.

Consequently, the case at bar is distinguishable from *Kock,* chiefly because the last legislative act affecting VIHA's liability was in fact the imposition of the $50,000.00 cap and not a legislative mandate of minimum insurance operating to waive a prior legislative cap, as Plaintiff would have this Court believe. (Opposition to Partial Summary Judgment

at 4.) During the legislative session seeking to amend Title 29 by adding the new Section 87, Senator Watlington explicitly recaps the legislative intent behind the amendment: "But the amendment is in fact to protect the Authority from any judgment over and above, or in fact liability over and above the fifty thousand dollars." (Transcript of Regular Session— Part I — April 13, 1994, p. 114.) Certainly, at the time Section 87 was passed, the Legislature was as fully aware of the existence of Section 35, subsection 18, which explicitly gives VIHA the power to purchase insurance, as it was of subsection 2, which gives VIHA the power to sue and be sued. Nonetheless, the Legislature distinctively chose to impose the $50,000.00 statutory cap in 1994, and since then, there has been no further clear and unequivocal legislative act from which one could infer that when VIHA purchases an insurance policy with a limit exceeding $50,000.00, VIHA thereby, absolutely and unequivocally waives its legislative right to immunity. Here, unlike *Kock*, there has been no legislative mandate of minimum insurance, or any other legislative act indicating a desire to further waive sovereign immunity. In the absence of such act a mere functionary from the executive branch cannot single-handedly waive sovereign immunity[3] by simply purchasing an insurance policy with a limit exceeding a statutorily imposed "cap," even if VIHA's insurance policy included an endorsement waiving the defense of sovereign immunity, as Plaintiff indicates in his motion to reconsider.

Ruling otherwise would allow plaintiffs to circumvent the law by sheer windfall, ultimately resulting in judgments in excess of $50,000.00, thereby disregarding legislation distinctly created to protect the coffers of VIHA in the public's interest of maintaining low income quality housing. Acceptance of Plaintiff's argument would aberrantly result in the ability of a functionary from the executive branch to singularly alter clear legislation limiting plaintiffs' rights to recovery by simply purchasing insurance coverage in excess of the statutory limit. Even when, as in this case, the insurance policy's limits of $500,000.00, seeks to provide

---

[3] An express waiver of sovereign immunity will be strictly construed and narrowly read, and only the legislature, not the executive, may waive sovereign immunity. *Id.* And such a waiver will not be inferred lightly. *Soriano v. United States*, 352 U.S. 270, 1 L. Ed. 2d 306, 77 S. Ct. 269 (1957); *Harris v. Municipality of St. Thomas and St. John*, 212 F.2d 323 (3d Cir. 1954); *Puerto Rico v. Shell Co.*, 302 U.S. 253, 262, 82 L. Ed. 235, 58 S. Ct. 167 (1937).

general coverage, for personal injury claims against VIHA including those explicitly excluded from the $50,000.00 statutory limit. (Commercial General Liability Part, Policy No. A98AG04945, p. 1 of 1.) In other words, since by virtue of § 87(b), VIHA may not be statutorily immune from actions arising in gross negligence, the fact that its insurance policy's limits exceeded the $50,000.00 statutory "cap" is not only understandable but in retrospect could have been deemed financially necessary to protect the public's interest in low income housing. For the foregoing reasons, the Court will affirm its earlier ruling.

## 2. Motion to Certify for Interlocutory Appeal

 Plaintiff alternatively requested certification for appeal. Certification is appropriate where; (1) the motion to be appealed involves a controlling question of law; (2) there is substantial ground for difference of opinion with respect to the resolution of the issue to be appealed; and (3) immediate appeal could materially advance the ultimate termination of the litigation. *Diaz v. Pueblo Int'l, Inc.,* 23 V.I. 382, 384 (Terr. Ct. 1988). Because this Court finds that an immediate appeal from the order will not materially advance the ultimate termination of litigation, Plaintiff's request to certify for interlocutory appeal is also denied. Plaintiff surmised in its reply to Defendant's Opposition that, "interlocutory appeal has some chance of speeding the termination of the litigation." Contrarily, the Court finds that denying interlocutory appeal and allowing instead for the parties to go to trial would more judiciously expedite termination of this litigation. Although, judgment against VIHA would be limited to $50,000.00, a verdict for the Plaintiff would not be limited. In the event Plaintiff wins at trial there would be a jury verdict in place that would take effect should Plaintiff also win on final appeal. Plaintiff's interest in the action would actually be fully preserved. Granting an interlocutory appeal at this juncture would only serve to needlessly prolong litigation.

In light of the foregoing, Plaintiff's Motion for Reconsideration or in the Alternative to Certify for Interlocutory Appeal will be denied.